**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ———————————————— | : | |
| HONG ZHUANG, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. 18-1432-BRM-TJB |
| EMD PERFORMANCE MATERIALS | : | |
| CORP., | : | |
| | : | **OPINION** |
| Defendant. | : | |
| ———————————————— | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is: (1) Defendant EMD Performance Material Corp.'s ("EMD PM")
Motion to Dismiss Hong Zhuang's ("Zhuang") Amended Complaint (ECF No. 13); Zhuang's
Motion for Preliminary Injunction (ECF No. 15); and Zhuang's Motion to Strike EMD PM's
"untimely opposition" to her Motion for Preliminary Injunction (ECF No. 18). All motions are
opposed. (ECF Nos. 14, 17, 20.) Having reviewed the submissions filed in connection with the
motions and having declined to hold oral argument pursuant to Federal Rule Civil Procedure 78(b),
for the reasons set forth herein, and for good cause shown, Zhuang's Motion to Strike is **DENIED**.
EMD PM's Motion to Dismiss is **DENIED in part** and **GRANTED in part**. Zhuang's Motion
for a Preliminary Injunction is **DENIED.**

## I.   BACKGROUND[1]

### A.   Factual Background

Zhuang was employed by EMD PM for seventeen years, promoted from chemist to senior chemist and finally to product safety coordinator, and terminated on April 3, 2017. (Supplement to Compl. (ECF No. 11) at 1-2.) She alleges that EMD PM terminated her employment based on her: (1) age (57); (2) race (Asian); and (3) association with her husband who is disabled. (*Id.*) She further claims EMD PM: (1) interfered with her right to take family medical leave and terminated her for complaining of their alleged Family Medical Leave Act ("FMLA") interference; and (2) EMD PM "intentionally made a false defamation rumor against [her] and damaged [her] reputation and [her] career." (*Id.*)

Specifically, Zhuang contends she "was the only Asian on her team." (*Id.* at 2.) On April 2016, she allegedly informed her manager that her "husband was critically ill with stage 4 cancer" and that she "would need time to care for [her] husband and asked for the consideration of arranging team activities in New Jersey facility when possible, so that [she] could assist husband in evenings." (*Id.*) She claims after she advised EMD PM of her husband's situation, "all meetings (many required overnight stays) were all held in Philadelphia office, and [she] experienced hostile discriminatory treatments from [her] management in several ways." (*Id.*)

Zhuang's Amended Complaint consists of 22 pages, 10 of which consist of an incoherent and disorganized details of alleged discriminations. (*Id.* at 2-12.) The Court has considered all events but will only articulate those it can comprehend.

---

[1] The facts set forth in this Opinion are taken from the Amended Complaint (ECF No. 11), the parties' briefs and related filings.

### 1.    Discrimination

Zhuang alleges that, in late February 2017, her manager "appended a section of non-existent negative performance comments and an employment warning to [her] already done 2016 Performance Management Form and forwarded online for 'employee acknowledgment' without informing [her] of the addition." (*Id.* at 3.) On April 3, 2017, Zhuang was asked to attend a meeting concerning her Performance Improvement Plan ("PIP"). (*Id.* at 5.) The PIP allegedly stated Zhuang was "failing to meet performance requirements" and that "failure to demonstrate immediate, significant, and sustained improvement may cut the PIP period short and result in corrective action – up to and including termination.'" (*Id.*) Zhuang was terminated during the meeting. (*Id.* at 6.)

Zhuang contends she was discriminated against "due to association with a disabled person based on assumption of fear that [she] was unable to put all [she] could into [her] job. The discrimination against [her] race and age played major roles in these as well." (*Id.*) This discrimination allegedly "happened in three forms." (*Id.*) First, after notifying EMD PM of her husband's condition, her work load increased and she was working what was considered two full-time jobs. (*Id.*) She alleges that her team consisted of six members, but "only Stephanie Brockenbrough, who is Black, and [her], an Asian, were required to write weekly work reports. Other members, all white, were not required to write weekly reports." (*Id.* at 8.) Second, Zhuang alleges she "experienced hostile discriminatory treatments from [] management when [she] needed time off or needed evening hours assisting [her] sick husband." (*Id.*) For example, she states in June 2016, she and her work partner carpooled to Philadelphia for a team meeting. (*Id.*) After the meeting, both of them declined to remain at the social dinner because she had a "sick husband at

home" and her co-worker had personal business. (*Id.*) She was allegedly criticized for not staying, but her co-worker, who was white, did not receive any criticism. (*Id.*) Zhuang alleges:

> Because of 17 years of service, [she] was entitled 27 days of paid time off per year. Due to all the difficulties and resistances [she] met with whenever requesting time off, [she] had to cancel/postpone time off plans. [She] was only able to take 20 of the 27 days in 2016 with [her] husband being ill most of the time. The remaining 7 days were forfeited.

(*Id.* at 10.) Third, she alleges, "When a young white new employee could not perform the job after his planned training by others, it was used as a performance issue for [her] termination." (*Id.*)

Zhuang's Amended Complaint fails to allege whether or not she filed any charges of discrimination with the EEOC. However, attached to the amended complaint was an "Intake Questionnaire" filed with the EEOC on September 22, 2017. (ECF No. 11-2.) On October 27, 2017, the EEOC sent EMD PM a "Notice of Charge of Discrimination," notifying EMD PM that no action was required of EMD PM and that "[a] perfected charge will be provided to [EMD PM] once it has been received." (ECF No. 13-3.) On December 18, 2017, the EEOC issued a "Dismissal and Notice of Rights" letter because it was "unable to conclude that the information obtained establishes violations of the statutes. This does not certify that [EMD PM] is in compliance with the statutes. No finding is made as to any other issue that might be construed as having been raised by this charge." (ECF No. 13-4.)

### 2.    FMLA and NJFLA

In addition to her discrimination claims, Zhuang claims EMD PM interfered with her right to receive FMLA benefits and terminated her after she complained about them violating her FMLA rights. (ECF No. 11 at 12.) Zhuang alleges:

> On March 20, 2017, I got informed that the manager's harassments, demands, and employment threat constitute interference with my rights under FMLA. Therefore, I send [sic] an E-mail message to

4

> my manager's management (Paul Newcomb and Karl Hensen) for help. I complained about having been the target of the unceasingly discriminatory hostile work environment including the fabricated allegations and the threatening of employment if I did not take up all work for the whole team. I complained that the manager's demands and employment threat "might be unlawful according to US FMLA law."

(*Id.* at 13.) As a result of her email, the EMD PM human resources representative asked her if she ever applied for "unpaid FMLA through the company system." (*Id.*) Zhuang acknowledges she did not apply for FMLA "because [she] had 27 days of paid time off that [she] wanted to use assisting [her] husband but the manager's substantially increased work demands and employment threatening made it impossible." (*Id.*) She further admits she was advised that, "[s]hould [she] need to apply in the future, [she] can go to the HR4You (company website)." (*Id.*)

### 3.    Defamation

Zhuang alleges EMD PM "made false, defamatory statement[s] against [her] and spread it. [sic] Purposely damaged [her] reputation and second job after EMD [PM]." (*Id.* at 14.) In 2015, Zhuang learned of "a confusion" in 2009 "regarding a case of laboratory use rubber gloves" and "whether [they] belonged to Product Engineering or Research & Development." (*Id.*) Specifically, she contends she took laboratory rubber gloves from the research laboratory to the Product Engineering pilot laboratory for use. (*Id.*) Someone from the Research and Development team saw her take the gloves and speculated she took them home. (*Id.*) When she learned of the misunderstanding, "it was important for [her] to get honesty misunderstanding [sic] clarified no matter [sic] it had been a while." (*Id.*) Therefore, she spoke "with the witness and called a discussion meeting with relevant employees and managers . . . for clarification." (*Id.*) She alleges the issue was clarified, and no one expressed any concerns. (*Id.* at 15.) However, Zhuang claims in April 2017, right before her termination, EMD PM created a false statement that there was a

previously closed investigation on the 2009 glove issues. (*Id.*) She alleges there was never an investigation and that EMD PM "fabricated that rumor in order to cover the unlawful termination." (*Id.*) This rumor was allegedly communicated to employees and managers who participated in her meeting about the 2009 glove matter and recorded in her PIP. (*Id.*) A prospective job somehow learned of the rumor and she "lost that job." (*Id.* at 16.)

### B. Procedural Background

Based on all these allegations, Zhuang filed a Complaint on February 8, 2018. (ECF No. 1.) EMD PM filed a Motion to Dismiss on March 16, 2018. (ECF No. 7.) On April 2, 2018, Zhuang filed an Amended Complaint alleging violations of: (1) Title VII of the Civil Rights Act of 1964; (2) Age Discriminating in Employment Act of 1967 ("ADEA"); (3) the Americans with Disabilities Act ("ADA"); (4) the New Jersey Law Against Discrimination ("NJLAD") (5) FMLA; (6) New Jersey Family Leave Act ("NJFLA"); and (7) the "New Jersey Slander and Defamation Laws." (ECF No. 11 at 2-2.) Due to Zhuang's filing, the Court administratively terminated the Motion to Dismiss, allowing EMD PM to refile it based on the allegations in the Amended Complaint. (ECF No. 12.) On April 16, 2018, EMD PM refiled its Motion to Dismiss. (ECF No. 13.) Zhuang opposes the Motion. (ECF No. 14.)

On April 27, 2018, Zhuang filed a Motion for Preliminary Injunction requesting that her employment with EMD PM be reinstated. (ECF No. 19 at 1.) EMD PM opposes the Motion. (ECF No. 17.) On May 17, 2018, Zhuang also filed a "Motion to Strike EMD PM's untimely Opposition to Zhuang's Motion for Preliminary Injunction." (ECF No. 18.) EMD PM also opposes this Motion. (ECF No. 20.) All motions were fully briefed by June 4, 2018. Regardless of whether EMD PM's opposition is untimely, the Court finds, as set forth below, Zhuang has failed to

establish she is likely to suffer irreparable harm in the absence of preliminary relief. As such, EMD PM's opposition is immaterial. Accordingly, Zhuang's Motion to Strike is **DENIED**.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it

must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**B.     Motion For Preliminary Injunction**

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). "A plaintiff seeking a preliminary injunction must establish that he is [1] likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Ferring*, 765 F.3d at 210 (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). The movant bears the burden of showing that these four factors weigh in favor of granting the injunction, and a failure to establish any one factor will render a preliminary injunction inappropriate. *Ferring*, 765 F.3d at 210. *See also Am. Tel. & Tel. Co. v. Winback Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) (holding that a party must produce sufficient evidence of all four factors – and requiring a district court to weigh all four factors – prior to granting injunctive relief).

### III. DECISION

### A. Defendants' Motion to Dismiss

#### i. Zhuang's Federal Claims for Discrimination (ADA, ADEA, Title VII)

According to EMD PM, Zhuang's discrimination claims under Title VII and ADA fail because she "did not exhaust her administrative remedies by filing a charge of discrimination with the EEOC relating to these claims." (ECF No. 13-5 at 4.) EMD PM argues Zhuang's filing of the unverified Intake Questionnaire with the EEOC cannot satisfy the administrative exhaustion requirement because it is not a formal charge. (*Id.* at 6.)

As for the ADEA claim, on July 27, 2018, EMD PM filed a letter (the "July 27 Letter") to notify the Court "of additional case authority relevant to EMD PM's Motion to Dismiss." (ECF No. 21.) The July 27 Letter acknowledged that:

> unlike the exhaustion requirements applicable to claims under Title VII and the ADA, which require that a charge be sworn to under oath or supported by an unsworn declaration in writing under penalty of perjury, an unverified Intake Questionnaire in the form submitted by Plaintiff . . . satisfies the administrative exhaustion requirements applicable to claims brought under the ADEA.

(ECF No. 21.) Nonetheless, EDM PM argues Zhuang's ADEA claim should be dismissed for failure to state a claim. (*Id.* (arguing Zhuang fails "to plead facts giving rise to an inference that, but for her age, her employment would not have been terminated").)

In her opposition, Zhuang argues she filed a valid formal charge of discrimination with the EEOC for her Title VII, ADA, and ADEA claims. (ECF No. 14 at 6-9.) In response to EMD PM's July 27 Letter, she argues the exhaustion requirement applicable to the ADEA also extends to Title VII and ADA claims as well. (ECF No. 22 ¶ 4.)

Prior to initiating an action under the ADEA, ADA, or Title VIII, a plaintiff must file a charge with the EEOC within either 180 or 300 days of the alleged unlawful employment action,

9

depending upon whether the state has an anti-discrimination law. *See* 42 U.S.C. § 2000e-5 (Title VII); 29 U.S.C. § 626(d) (ADEA); 42 U.S.C. § 12117(a) (ADA); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (finding "[p]laintiffs bringing employment discrimination charges under the ADA must comply with the procedural requirements set forth in Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–5"); *Cardenas v. Massey*, 269 F.3d 251, 255 (3d Cir. 2001). "[B]ecause New Jersey has an anti-discrimination law, a claim must be presented to the EEOC within 300 days of the alleged unlawful employment practice." *Cardenas*, 269 F.3d at 255 n.2. A plaintiff's failure to exhaust administrative remedies prior to filing a charge of discrimination under the ADEA, ADA, or Title VII warrants dismissal. *See Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000) ("Under Title VII and the ADEA, plaintiffs residing in states having an agency authorized to grant relief for federally prohibited employment discrimination must resort to that state remedy before they will be allowed access to federal judicial relief."); *Robinson v. Univ. of Med. & Dentistry of N.J.*, No. 06-1158, 2006 WL 3371748, at *2 (D.N.J. Nov. 17, 2006) ("Because there is no dispute that Plaintiff failed to file an EEOC charge and obtain a right to sue letter, Plaintiff's ADA claims must be dismissed under Rule 12(b)(6) for failure to exhaust administrative remedies."). Additionally, after filing a charge with the EEOC, a plaintiff must receive a "right to sue" letter before filing with the district court. *Ditzel v. Univ. of Med. & Dentistry of N.J.*, 962 F. Supp. 595, 602 (D.N.J. 1997); *Burgh v. Borough Council*, 251 F.3d 465, 470 (3d Cir. 2001) (stating the EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before she can initiate a private action).

The filing of an unverified Intake Questionnaire with the EEOC does not satisfy the administrative exhaustion requirement under Title VII, the ADA, or ADEA. *See Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 415 (3d Cir. 2010); *Carr v. New Jersey*, No. 09-913, 2010

WL 2539782, at *5 (D.N.J. June 17, 2010) (finding "while courts may construe a [c]harge liberally to determine the proper scope of a reasonable EEOC investigation and the ensuing litigation, they have declined to use the Intake Questionnaire for that purpose"). Notably,

> [t]he EEOC Charge Form and the Intake Questionnaire serve different purposes. An Intake Questionnaire facilitates "pre-charge filing counseling" and allows the Commission to determine whether it has jurisdiction to pursue a charge. Moreover, the Intake Questionnaire is not shared with the employer during the pendency of the EEOC investigation. On the other hand, an EEOC Charge Form serves to define the scope of the Commission's investigation and to notify the defendant of the charges against it.

*Barzanty*, 361 F. App'x at 415 (internal citations omitted). A plaintiff is not allowed to transfer the allegations in the questionnaire to the charge itself because it would circumvent the role of the EEOC and be prejudicial to the employer. *Id.*

However, the Third Circuit has determined an Intake Questionnaire may be used to satisfy the exhaustion requirement under a Title VII, the ADA, or ADEA claim if it is verified. *See Urban v. Bayer Corp. Pharm. Div.*, 245 F. App'x 211, 213 (3d Cir. 2007) ("[The Intake Questionnaire] was not, as required under Title VII, verified, and accordingly, did not cause the EEOC to initiate its investigation. It therefore does not constitute a 'charge' for the purposes of the 300-day limitations period." (citations omitted)). A charge is deemed verified if it is "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgements or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a). The Third Circuit has established that a document not signed "under penalty of perjury" does not satisfy the verification requirement. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 261 (3d Cir. 2006).

As to ADEA claims, the Supreme Court and the Third Circuit have established "[a]n EEOC filing constitutes a charge of discrimination if it satisfies the requirements of 29 C.F.R. § 1626.6,

and can 'reasonably [be] construed as a request for [the EEOC] to take remedial action to protect the employee's rights." *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 113 (3d Cir. 2014) (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)). In *Holowecki*, the Supreme Court instituted a "permissive" interpretation of the charge requirement, by allowing a "wide range of documents," including an intake questionnaire, to qualify as "charges." *Holowecki*, 552 U.S. at 402. The Court, however, noted, "this result is consistent with the design and purpose of the ADEA." *Id.* The Court also cautioned, "[w]hile there may be areas of common definition [between Title VII, the ADA, and the ADEA], employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Id.* at 392.

Following the *Holowecki* decision, the EEOC revised its Intake Questionnaire to allow claimants to check a box requesting that the EEOC take remedial action. *Hildebrand*, 757 F.3d at 113. This box ("Box 2") states:

> I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. . . .

*Id.* "Under the revised form, an employee who completes the Intake Questionnaire and checks Box 2 unquestionably files a charge of discrimination." *Id.*

As to the ADEA claim, Zhuang has sufficiently pled she completed the Intake Questionnaire and checked Box 2. (ECF No. 11-2.) Accordingly, she has sufficiently pled she satisfied the administrative requirements. EMD PM's July 27 Letter argues Zhuang's ADEA claim should nevertheless be dismissed because it fails "to plead facts giving rise to an inference that, but for her age, her employment would not have been terminated." (ECF No. 21.) However, neither

EMD PM's moving papers or July 27 Letter analyzes how Zhuang fails to plead the individual elements necessary to establish an ADEA claim and thus EMD PM has not met its burden on a motion to dismiss. Accordingly, EMD PM's Motion to Dismiss Zhuang's ADEA claim is **DENIED**.

Zhuang does not reference any Supreme Court, Third Circuit, or New Jersey District Court case, and the Court finds none, that extends *Holowecki's* permissive interpretation of the charge requirement to ADA or Title VII claims. As such, this Court is not inclined to do so in the first instance at this time, considering: (1) the Supreme Court's caution that "[w]hile there may be areas of common definition [between Title VII, the ADA, and the ADEA], employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination," *Holowecki*, 552 U.S. at 392; and (2) that the Court nevertheless denies EMD PM's Motion to Dismiss Zhuang's ADA and Title VII claims.

As to Zhuang's ADA and Title VII claims, the Court finds the Amended Complaint as pled is unclear as to whether, at some point, Zhuang filed a formal charge with the EEOC. Zhuang alleges and provides evidence that she filed an Intake Questionnaire on September 22, 2017. (ECF No. 11-2.) The Intake Questionnaire was not verified, and Zhuang has failed to provide evidence of a formal charge. Nevertheless, on December 14, 2017, the EEOC sent EMD PM a "Notice of Charge of Discrimination." (ECF No. 11-3.) This Notice of Charge stated, "This is notice that a charge of employment discrimination has been filed with the EEOC against your organization by [] Zhuang." (*Id.*) Moreover, on December 18, 2017, the EEOC sent Zhuang a Dismissal and Notice of Rights Letter. (ECF No. 13-4.) This letter indicated the EEOC was closing its file on "this charge" because it was "unable to conclude that the information obtained establish violations of the statues. This does not certify that [EMD PM] is in compliance with the statutes. No finding is

made as to any other issues that might be construed as having been raised by this charge." (*Id.*) These letters indicate Zhuang filed a formal charge. "Generalized allegations in support of conditions precedent to the maintenance of Title VII claims, such as exhaustion of administrative remedies, are sufficient to survive a motion to dismiss." *Scocozza v. New Jersey*, No. 14-2095, 2014 WL 6674453, at *4 (D.N.J. Nov. 25, 2014) (citing *Hildebrand*, 757 F.3d at 111 (holding that *Iqbal* and *Twombly* pleading standards are inapplicable to conditions precedent)). Because the Court is "required to . . . draw all inferences in the facts alleged in the light most favorable to the [plaintiff]," *Phillips*, 515 F.3d at 228, EMD PM's Motion to Dismiss the ADA and Title VII claims based on the failure to exhaust administrative remedies is **DENIED**.

### ii.    Zhuang's FMLA and NJFLA Claims

EMD PM argues Zhuang's FMLA and NJFLA claims should be dismissed "because she admits in the Amended Complaint that she neither requested nor was denied any leave." (ECF No. 13-5.) Zhuang alleges EMD PM interfered with her ability to take FMLA and NJFLA leave by requiring her to work more after she informed them her husband was critically ill and that she would need time to help him out. (ECF No. 14 at 13.) She further contends EMD PM failed its obligations of informing her of her rights under the FMLA. (*Id.* at 16.) Lastly, she argues EMD PM retaliated against her after she sent them an email complaining that the excessive working demands were unlawful under the FMLA. (ECF No. 15-16.)

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). A plaintiff is an "eligible employee" for FMLA purposes if he was employed "for at least 12 months by the employer with respect to whom leave is requested" and

"for at least 1,250 hours of service with such employer during the previous 12-month period." 29

U.S.C. § 2611(2)(A). It further provides that an

> employee who takes leave under section 2612 . . . shall be entitled, on return from such leave . . . to be restored by the employer to the position of employment held by the employee when the leave commenced; or . . . to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1). It shall be unlawful for an employer to: (1) "interfere with, restrain, or

deny the exercise of or the attempt to exercise, any right provided under" the FMLA and (2)

"discharge or in any other manner discriminate against any individual for opposing any practice

made unlawful" by the FMLA. 29 U.S.C. § 2615.

Under the NJFLA, an employee is, "entitled to a family leave of 12 weeks in any 24-month

period upon advance notice to the employer . . . [i]n the case of a family member who has a serious

health condition." N.J.S.A. § 34:11B-4. An "employee" "means a person who is employed for at

least 12 months by an employer . . . for not less than 1,000 base hours during the immediately

preceding 12-month period." N.J.S.A. § 34:11B-3(e). Similar to the FMLA, the NJFLA provides:

> An employee who exercises the right to family leave . . . shall . . . be entitled to be restored by the employer to the position held by the employee when the leave commenced or to an equivalent position of like seniority, status, employment benefits, pay, and other terms and conditions of employment.

N.J.S.A. § 34:11B-7. It shall also be unlawful for any employer to "interfere with, restrain or deny

the exercise of, or the attempt to exercise, the right provided under [the NJFLA]." N.J.S.A. §

34:11B-9(a).

"Due to the similarity of the statutes, courts apply the same standards and framework to

claims under the FMLA and the NJFLA." *Wolpert v. Abbott Labs.*, 817 F. Supp. 2d 424, 437

(D.N.J. 2011) (citing *Santosuosso v. NovaCare Rehab.*, 462 F. Supp. 2d 590, 596 (D.N.J. 2006)).

To prevail on an interference claim, a plaintiff must show: (1) he was entitled to take FMLA and NJFLA leave and (2) the employer denied his right to do so. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 312 (3d Cir. 2012); *Hall-Dingle v. Geodis Wilson USA, Inc.*, No. 15-1868, 2017 WL 899906, at *4 (D.N.J. Mar. 7, 2017) ("[A] plaintiff bringing an interference claim under the [NJFLA] must show that she was entitled to benefits and denied those benefits.").

"To establish a prima facie claim for retaliation under the FMLA and NJFLA, the plaintiff must demonstrate that: (1) she took a FMLA/NJFLA leave; (2) she suffered from an adverse employment decision; and (3) the adverse decision was casually related to her FMLA/NJFLA leave." *Valenti*, 2015 WL 3965645, at *3 (quoting *Truesdell v. Source One Personnel Inc.*, No. 07-1926, 2009 WL 1652269, at *4 (D.N.J. June 9, 2009) (citations omitted)). Once the plaintiff establishes a prima facie claim for retaliation under the FMLA and NJFLA, the claim must be analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (stating that once the plaintiff establishes a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its alleged unlawful action, and if that is satisfied, the burden shifts back to the plaintiff to demonstrate the evidence proffered by the employer was a pretext for retaliation). *See Truesdell*, 2009 WL 1652269, at *4.

To invoke one's rights under the FMLA, one must provide adequate notice to their employer about their need to take leave. 29 U.S.C. § 2612(e)(2). An employee does not need to "expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.303(b). The employee only needs to "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." *Id.* This is not a formalistic or rigorous standard. *See Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007) (stating a "liberal construction" should be given to FMLA's notice requirement). The FMLA

provides that "where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee . . . to ascertain whether leave is potentially FMLA-qualifying." 29 C.F.R. § 825.303(a). Therefore, the test "is not whether the employee gave every necessary detail to determine if the FMLA applies, but how the information conveyed to the employer is reasonably interpreted." *Lichtenstein*, 691 F.3d at 303. "How the employee's notice is reasonably interpreted is generally a question of fact, not law." *Id.*

EMD PM's only argument for dismissal of Zhuang's FMLA and NJFLA retaliation and failed obligations of informing her of her rights under the FMLA claims is that she did not invoke her right to FMLA-qualifying leave. As such, the Court will only address whether Zhuang has alleged sufficient facts to demonstrate she invoked her right to FMLA leave. The Court disagrees with EMD PM. Zhuang's Amended Complaint alleges she notified EMD PM of her husband's condition and that she needed time off or needed evening hours to assist her sick husband. (ECF No. 11 at 8.) Because an employee need not "expressly assert rights under the FMLA or even mention the FMLA," 29 C.F.R. § 825.303(b), and it is not a formalistic or rigorous standard*, Sarnowski,* 510 F.3d at 402, the Court finds Zhuang's allegations, as pled, are sufficient. EMD PM's Motion to Dismiss Zhuang's FMLA and NJFLA retaliation claims is **DENIED**.

EMD PM argues Zhuang's interference claim fails because Zhuang "has not alleged that she was ever denied days off to care for her husband." (ECF No. 17 at 8.) The Court agrees. Zhuang has failed to allege EMD PM denied her right to take leave to care for her husband. Zhuang merely alleges "[she] had 27 days of paid time off that [she] wanted to use assisting [her] husband but the manager's substantially increased work demands and employment threatening made it impossible." (*Id.*) This is not enough. Zhuang does not allege she requested time off and was

denied. Accordingly, EMD PM's Motion to Dismiss Zhuang's FMLA and NJFLA interference claims is **GRANTED**.

### iii.    Zhuang's Defamation Claim

EMD PM argues Zhuang fails to state a claim for defamation because she has failed to allege Defendants made a "defamatory statement" concerning her. (ECF No. 13-5 at 10-12.) Zhuang argues Defendants made a defamatory statement to employees and managers and published in Zhuang's PIP a statement stating, "that there was a previous company HR investigation closed on this 2009 glove matter years ago." (ECF No. 14 at 21-22.)

There are three necessary elements to state a claim for defamation under New Jersey: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *DeAngelis v. Hill*, 847 A.2d 1261, 1267-68 (2004). "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him." *G.D. v. Kenny*, 15 A.3d 300, 310 (2011). "To determine whether a statement is defamatory, a court looks to the fair and natural meaning [to be given to the statement] by reasonable persons of ordinary intelligence." *Id.* (citation omitted).

In a defamation action, truth is a common-law defense. *Id.* In fact, "[t]ruth may be asserted as a defense even when a statement is not perfectly accurate." *Id.* The law of defamation overlooks minor inaccuracies, focusing instead on "substantial truth." *Id.* (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991)); *see also Stampone v. Walker*, 15-6956, 2017 WL 517791, at *7 (D.N.J. Feb. 8, 2017), *reconsideration denied*, 2017 WL 1337424 (D.N.J. Apr. 5, 2017) (finding that statements that are substantially true, however, are not defamatory); *Birch v.*

*Wal-Mart Stores, Inc.*, 2015 WL 8490938, at *3 (D.N.J. Dec. 9, 2015). "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *G.D.*, 15 A.3d at 311 (citations omitted).

Here, Zhuang has not pled facts sufficient to satisfy the element of "false and defamatory statement." Zhuang alleges EMD PM falsely stated "there was a previous company HR investigation closed on this 2009 glove matter years ago." (ECF No. 14 at 21.) She, however, contends no formal "investigation" occurred. Nonetheless, she admits "[t]here was indeed a 'misunderstanding' among a R&D group about [Zhuang's] honesty in the workplace in 2009." (*Id.* at 22.) She acknowledges that in 2015 she learned of "a confusion" that occurred in 2009 "regarding a case of laboratory use rubber gloves" and "whether it belonged to Product Engineering or Research & Development." (ECF No. 11 at 14.) She further admits she took laboratory rubber gloves from the research laboratory to the Product Engineering pilot laboratory for use and that someone from the Research & Development team saw her take the gloves and speculated she took them home. (*Id.*) As such, Zhuang admits someone inquired as to her honesty in 2009; whether a formal investigation ensued is inapposite. EMD PM's statement, as asserted by Zhuang in her Amended Complaint, is substantially true. "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *G.D.*, 15 A.3d at 311 (citations omitted). Accordingly, EMD PM's Motion to Dismiss Zhuang's defamation claim is **GRANTED**.

> ### iv.    Zhuang's NJLAD Claim

EMD PM argues Zhuang's NJLAD age, race, and associational discrimination claims should be dismissed because Zhuang "baldly alleges that she believes she was discriminated against on the basis of her age (57) and her race (Asian)." (ECF No. 13-5 at 13.) EMD PM further

asserts Zhuang, "fails to plead facts giving rise to an inference that her employment was *terminated due to* her age, race or her husband's disability." (ECF No. 17.) Zhuang contends EMD PM "never gave [her] a reason for her termination to relate, and therefore she has to rely on the discriminatory facts against her age, race, and disability association which occurred in the period right before her termination for interference od the discriminations to the adverse employment action." (ECF No. 14 at 10.)

The NJLAD provides, in pertinent part, that it is unlawful "[f]or an employer, because of the race . . . age . . . disability . . . of any individual . . . to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.J.S.A. § 10:5–12. To establish a prima facie case of unlawful termination under the NJLAD, a plaintiff must demonstrate: (1) she belongs to a protected class, (2) she was qualified for the position held, (3) she was terminated despite adequate qualifications, and (4) that the employer's reason for terminating her was affected significantly by her protected class. *Arenas v. L'Oreal USA Prod., Inc.*, 790 F. Supp. 2d 230, 236 (D.N.J. 2011), *aff'd*, 461 F. App'x 131 (3d Cir. 2012). "To make a prima facie case of [] discrimination under the NJLAD, [a plaintiff] must show that the [her protected class] played a role in the decision making process to terminate her employment and that it had a determinative influence on the outcome of that process." *Id.* at 235. (citation omitted). This can be demonstrated by direct or circumstantial evidence. *Id.*

EMD PM does not dispute that Zhuang has met the first three elements of a prima facie case, however, it disputes the fourth element. The Court finds Zhuang has failed to allege facts giving rise to an inference that she was terminated due to her race or age. While Zhuang alleges instances where she was treated differently because of her race, she does not allege facts

demonstrating how those instances were related to her termination. Zhuang contends her team consisted of six members, but "only Stephanie Brockenbrough, who is Black, and [her], an Asian, were required to write weekly work reports. Other members, all white, were not required to write weekly reports." (ECF No. 11 at 8.) She further alleges that, in June 2016, her work partner and her carpooled to Philadelphia for a team meeting. (*Id.*) After, the meeting, both declined to remain at the social dinner because she had a "sick husband at home" and her coworker had personal business. (*Id.*) She was allegedly criticized for not staying, but her co-worker, who was white, did not receive any criticism. (*Id.*) However, she does not connect any of those instances to her termination. Accordingly, EMD PM's Motion to Dismiss as to Zhuang's NJLAD race discrimination claim is **GRANTED**.

As for age discrimination, she claims, "When a young white [sic] could not perform his planed [sic] job well beyond his planned training, he was not to blame, his assigned trainer (white) was not, but a 57 years old Asian who helped was to punish and terminate." (ECF No. 11 at 11.) However, Zhuang alleges no specific instances of training a "young white" employee or being punished for his failures. Her allegation is purely conclusory. She fails to make the connection between helping a "young white" employee who "could not perform" his job and being terminated. While "[d]etailed factual allegations" are not required, "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). Accordingly, EMD PM's Motion to Dismiss as to Zhuang's NJLAD age discrimination claim is **GRANTED**.

As for her claim of associational discrimination, Zhuang contends that "[a]fter [she] enrolled [her] husband with cancer condition into [her] company sponsored health insurance . . .

her manager altered [her] . . . performance [review] . . . , and used it to terminate [her] on April 3, 2017." (ECF No. 11 at 8.) Zhuang has sufficiently pled her association with her disabled husband "played a role in the decision making process to terminate her employment and that it had a determinative influence on the outcome of that process." *Arenas*, 790 F. Supp. 2d at 235. Accordingly, EMD PM's Motion to Dismiss as to Zhuang's NJLAD associational discrimination claim is **DENIED**.

### B.    Zhuang's Motion for Preliminary Injunction

Zhuang seeks a preliminary injunction "to reinstate [her] employment" with EMD PM. (ECF No. 15-1 at 1.) "A plaintiff seeking a preliminary injunction must establish that he is [1] likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Ferring*, 765 F.3d at 210 (quoting *Winter*, 555 U.S. at 20). An injunction may be issued "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *Winback*, 42 F.3d at 1427; *see also P.C. Yonkers, Inc. v. Celebrations! the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate."); *Ferring*, 765 F.3d at 210. A preliminary injunction also should not be issued where material issues of fact are in dispute. *Vita-Pure, Inc. v. Bhatia*, 2015 WL 1496396, at * 3 (D.N.J. Apr. 1, 2015) (denying injunction where factual disputes "preclude a determination that Plaintiffs have established a likelihood of success on the merits"); *Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, 2014 WL 5392065, at *2 (D.N.J. Oct. 23, 2014), *aff'd*, 588 F. App'x 197 (3d Cir. 2014). The Court must, therefore, weigh each of the four factors to determine whether Plaintiffs have, by a clear showing, carried their burden of persuasion. *See Winback*, 42

F.3d at 1427 (requiring a district court to weigh all four factors prior to granting injunctive relief). As discussed below, however, the Court finds Plaintiffs have not carried their "burden of proving a 'clear showing' of immediate irreparable injury." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). Therefore, the Court limits its discussion to only this factor.

### i.      Whether Zhuang Will Suffer Irreparable Harm

To warrant the issuance of an injunction, "[a] plaintiff has the burden of proving a clear showing of immediate irreparable injury." *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 205 (3d Cir. 1990) (citations omitted). Zhuang argues "[t]he harm suffered by [Zhuang] and her family as a result of being dismissed by [EMD PM] is immediate, irreparable and ongoing, and is the very type of damage that could not be compensated adequately by monetary damages." (ECF No. 15-1 at 13.) Specifically, she alleges that after her termination, Zhuang obtained a second job close to home, but lost it four months later. (*Id.* at 1.) Zhuang is currently employed at another job; however, she alleges her commute time is up to four hours a day and that it is "impractical when the husband is sick at home need [sic] medical care or assistance at any time." (*Id.* at 1-2.) Therefore, she is temporarily renting an apartment near her job during the week to care for her husband and they go back home on the weekends. (*Id.* at 2.) Zhuang also bases her irreparable harm claim on the poor air circulation in the apartment in which she currently resides, which worsens her husband's condition. (*Id.* at 2.)

EMD PM argues "loss of employment itself is not sufficient to give rise to irreparable injury." (ECF No. 17 at 15 (citing *Morton v. Beyer*, 822 F.2d 365, 372-73 (3d Cir. 1987).) The Court agrees. To the extent Zhuang alleges loss of her employment with EMD PM, a decrease in her salary, the expense of renting an apartment, or the expense of traveling four hours a day warrants irreparable harm, she is mistaken. All of those instances, including loss of employment,

are purely economic in nature and thus compensable in money. *Morton*, 822 F.2d at 372. Indeed, "[i]rreparable harm must be of a peculiar nature, so that compensation in money alone cannot atone for it." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 727 (3d Cir. 2004). Moreover, the apartment circulation is not sufficient to establish irreparable harm. Zhuang offers no reasoning as to why she cannot relocate to a different apartment. She presents no evidence of a lack of financial ability or any other circumstance preventing her from relocating. While the Court sympathizes with Zhuang's situation, she has failed to demonstrate a sufficient basis for injunctive relief. Because the Court finds Zhuang is not likely to suffer immediate irreparable harm in the absence of an injunction, Zhuang's Motion for a Preliminary Injunction is **DENIED**.

### IV.    CONCLUSION

For the reasons set forth above, EMD PM's Motion to Dismiss Zhuang's Amended Complaint (ECF No. 11) is **DENIED in part** and **GRANTED in part** as follows: (1) **DENIED** as to the federal claims for discrimination (ADA, ADEA, and Title VII); (2) **DENIED** as to the FMLA and NJFLA retaliation claims; (3) **GRANTED** as to the FMLA and NJFLA interference claim; (4) **GRANTED** as to the defamation claim; (5) **GRANTED** as to the NJLAD race discrimination claim; (6) **GRANTED** as to the NJLAD age discrimination claim; and (7) **DENIED** as to the NJLAD associational discrimination claim. Zhuang's Motion for a Preliminary Injunction (ECF No. 15) is **DENIED**. An appropriate Order will follow.


Date: August 10, 2017                          */s/ Brian R. Martinotti*
                                               **HON. BRIAN R. MARTINOTTI**
                                               **UNITED STATES DISTRICT JUDGE**